**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>LUIS LOUIS,<br><br>       Defendant. | 25 Cr. 563 (LAP) |

**THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS THE INDICTMENT OR ALTERNATIVELY**
**FOR AN ADVERSE JURY INSTRUCTION**

JAY CLAYTON
United States Attorney
Southern District of New York
26 Federal Plaza
New York, New York 10278

Leslie Arffa
Assistant United States Attorney
    *Of Counsel*

# **Table of Contents**

**PRELIMINARY STATEMENT** ............................................................................................... 1

**BACKGROUND** ..................................................................................................................... 2

**ARGUMENT**.......................................................................................................................... 5

**I.    THE DEFENDANT'S SPOLIATION CLAIM IS MERITLESS**..................................... 5

A.  The Defendant Has Failed to Establish Any Loss of Evidence
Chargeable to the Government ......................................................................................... 6

B.  The Defendant Has Failed to Establish That Any Missing Evidence Would
Be Exculpatory.............................................................................................................. 10

C.  The Defendant Has Failed to Establish That Comparable Evidence Is Unavailable.............. 11

D.  The Defendant Has Failed to Establish Bad Faith ........................................................... 12

**II.   THE DEFENDANT'S SECOND AMENDMENT CHALLENGE IS
MERITLESS** ....................................................................................................................... 14

A.  The Federal Government's Longstanding Prohibition on the Possession of Firearms
by Felons is Constitutional............................................................................................. 15

B.  Second Circuit Precedent Forecloses the Defendant's Second Amendment
Challenge ..................................................................................................................... 15

**CONCLUSION** ...................................................................................................................... 17

## TABLE OF AUTHORITIES

*Arizona v. Youngblood*
499 U.S. 51 (1988)............................................................................................... 12

*California v. Trombetta*,
467 U.S. 479 (1984).............................................................................................. 12

*United States v. Cesiro*,
2024 WL 4647667 (2d Cir. Nov. 1, 2024)..................................................... 7, 9, 10

*Creighton v. City of New York*,
2017 WL 636415 (S.D.N.Y. Feb. 14, 2017).......................................................... 8

*District of Columbia v. Heller*,
554 U.S. 570 (2008)......................................................................................... 2, 15

*Hernandez v. Burge*,
137 F. App'x 411 (2d Cir. 2005) .......................................................................... 13

*Johnson v. Clearview AI, Inc.*,
2024 WL 2274267 (S.D.N.Y. May 20, 2024) ...................................................... 9

*McDonald v. City of Chicago*,
561 U.S. 742 (2010)............................................................................................. 15

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
597 U.S. 1 (2022)............................................................................................. 2, 15

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
306 F.3d 99 (2d Cir. 2002) .................................................................................. 10

*Sachs v. Cantwell*,
2012 WL 3822220 (S.D.N.Y. Sept. 4, 2012)..................................................... 1, 8

*Tchatat v. O'Hara*,
249 F. Supp. 3d 701 (S.D.N.Y. 2017) ................................................................... 6

*United States v. Barnes*,
411 F. App'x 365 (2d Cir. 2011)......................................................................... 12

*United States v. Codrington*,
2009 WL 1766001 (E.D.N.Y. June 22, 2009) .................................................... 14

*United States v. Greenberg*
835 F.3d 295 (2d Cir. 2016) ................................................................... 6, 7, 10, 11

*United States v. Kloszewski,*
    760 F. App'x 12 (2d Cir. 2019) ................................................................................. 9

*United States v. Odeh (In re Terrorist Bombings of U.S. Embassies in E. Africa),*
    552 F.3d 93 (2d Cir. 2008) ......................................................................... 2, 5, 13

*United States v. Pirre,*
    927 F.2d 694 (2d Cir. 1991) .................................................................................. 13

*United States v. Rahimi,*
    602 U.S. 680 (2024).............................................................................................. 15

*United States v. Rahman,*
    189 F.3d 88 (2d Cir. 1999). ................................................................................. 6, 9

*United States v. Rastelli,*
    870 F.2d 822 (2d Cir. 1989). ......................................................................... 1, 12, 13

*United States v. Robinson,*
    2019 WL 5864135 (E.D.N.Y. Nov. 8, 2019)............................................................ 8

*United States v. U.S. Currency in the Amount of $228,536.00,*
    895 F.2d 908 (2d Cir. 1990) ................................................................................. 12

*United States v. Walker,*
    974 F.3d 193 (2d Cir. 2020) ........................................................................ 6, 11, 14

*West v. Goodyear Tire & Rubber Co.,*
    167 F.3d 776 (2d Cir. 1999) ................................................................................... 6

*Zherka v. Bondi,*
    140 F.4th 68, (2d Cir. 2025). ...................................................................... 2, 15, 16

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in opposition to defendant Luis Louis's motion to dismiss the Indictment charging him with violating 18 U.S.C. Section 922(g)(1), or in the alternative for an adverse jury instruction (the "Motion").

The defendant—who has at least four previous felony convictions including for multiple violent offenses—challenges the Indictment on two grounds.  The defendant argues the Court should dismiss the Indictment or in the alternative give an adverse jury instruction as a sanction for the Government's purported failure to collect video surveillance that he claims would be exculpatory.  Additionally, the defendant argues that the Indictment violates the Second Amendment.  Both arguments are meritless.

*First*, the defendant's bald accusation that the Government failed to preserve relevant video evidence is wrong, but the Court need not wade into that factual dispute at this early juncture because his spoliation claim fails for no fewer than four independent reasons.  As an initial matter, any lost video evidence—even on defendant's own theory—is not "chargeable" to the Government because the defendant's spoliation claim is premised on the Government's purported failure to request and preserve video surveillance captured by a third-party.  However, "spoliation sanctions are applicable only when a party loses or destroys evidence . . . not when he or she fails to collect it." *See Sachs v. Cantwell*, No. 10 Civ. 1663 (JPO), 2012 WL 3822220, at *7 (S.D.N.Y. Sept. 4, 2012).  In any event, to succeed on a spoliation claim, the defendant must prove the evidence "both possess[ed] an exculpatory value that was apparent before the evidence was destroyed, and [was] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *United States v. Rastelli,* 870 F.2d 822, 833 (2d Cir. 1989).  The defendant cannot satisfy either requirement, as he can only speculate wildly about the content of

1

any supposedly exculpatory, lost footage, and regardless, he has many alternative means to obtain comparable evidence.  Finally, the defendant's spoliation claim also fails because he has not shown bad faith on the part of the Government.  There is no reasonable dispute on this record that the Government did not "*intentionally destroy*[]" evidence, which is fatal to the defendant's spoliation claim.  *United States v. Odeh (In re Terrorist Bombings of U.S. Embassies in E. Africa)*, 552 F.3d 93, 148 (2d Cir. 2008) (emphasis added).

*Second*, the defendant's Second Amendment challenge is wrong and, as the defendant concedes, squarely foreclosed by Second Circuit precedent.  The Supreme Court has made clear, including in its decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), that the Constitution protects only the right of law-abiding citizens to possess guns for lawful purposes.  *See Bruen*, 597 U.S. at 81 (Kavanaugh, J., concurring) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 636 (2008) ("Nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.")).  Were there any doubt, the Second Circuit recently confirmed that the federal prohibition on firearm possession by convicted felons, under 18 U.S.C. § 922(g)(1), is constitutional on its face and that, because the statute "constitutionally disarms felons as a class," there is no due process right for individuals with felony convictions to make as-applied challenges to the statute based on those individuals' particular criminal history.  *Zherka v. Bondi*, 140 F.4th 68, 96 (2d Cir. 2025).

Accordingly, this Court should deny the Motion.

## **BACKGROUND**

This case concerns the defendant's unlawful possession of approximately ten firearms in an apartment in the Bronx.  As alleged in the Complaint, on or about October 10, 2025, New York Police Department ("NYPD") Officers responded to a reported burglary at an apartment building

located on Townsend Avenue in the Bronx (the "Building"). Dkt. 1 (Compl.) ¶ 3(a). The Superintendent of the Building informed the Officers that an individual, whom the Superintendent identified as the defendant, had broken into an unoccupied apartment in the Building (the "Apartment"), changed the locks of the Apartment, and appeared to be using the Apartment to store his personal belongings. *Id.* ¶ 3(a). The Superintendent later positively identified the defendant in a six-pack double blind photographic array, and he was also familiar with the defendant because the defendant had been staying in a different apartment in the Building. *Id.* ¶ 3(a). After the Officers gained entry to the Apartment, they recovered, among other things, approximately 10 firearms as well as approximately 204 rounds of ammunition. *Id.* ¶ 3(b). While the Officers were recovering the firearms and ammunition in the Apartment, a person matching the Superintendent's description of the defendant attempted to approach the Apartment, and, upon seeing that it was occupied by the NYPD Officers, fled. *Id.* ¶ 3(c).

The Superintendent provided additional evidence to law enforcement linking the defendant to the firearms. Specifically, the Superintendent provided video surveillance footage taken from the hallway outside of the Apartment, which revealed an individual who appears to be the defendant, entering and exiting the Apartment over the course of several days prior to and on the morning of October 10, 2025. *Id.* ¶ 3(c). The Government produced in discovery all the footage provided to law enforcement by the Superintendent, that is, approximately 24 different clips of surveillance footage taken from outside the Apartment spanning September 27, 2025 through October 10, 2025. Mot. at 5. That footage shows the defendant entering and exiting the Apartment on numerous occasions throughout that time period. On October 3, 2025, a different, unidentified individual is shown exiting the Apartment in the footage. Mot. at 5. For the next week—the week

3

prior to law enforcement gaining entrance to the Apartment—the defendant is the only person shown entering or exiting the Apartment. The Superintendent told law enforcement that the video surveillance footage was kept by a third-party security firm, and that the video surveillance in the Building is "motion activated," meaning the video does not continuously record but instead detects motion, which is why the footage was only provided in discrete clips. *See* Exhibit A (Interview with Superintendent).

The defendant also has an extensive criminal history.  He has at least four prior felony convictions, including a 2015 conviction for robbery in the first degree.  Compl. ¶ 4.  Indeed, the defendant had just finished completing a term of supervised release for the robbery conviction when he engaged in the instant offense.

On October 24, 2025, the defendant was charged by Complaint with violating 18 U.S.C. § 922(g)(1).  *See* Dkt. 1.  But members of law enforcement were unable to locate the defendant until he was arrested by the NYPD for breaking into yet another apartment in early December.  On December 3, 2025, the defendant was presented before the Honorable Robert W. Lehrburger, Magistrate Judge for the Southern District of New York and detained.  On December 10, 2025, a grand jury sitting in this District returned an Indictment charging the defendant with one count of violating 18 U.S.C. § 922(g)(1).  Dkt. 5.

On December 18, 2025, the defendant was arraigned by this Court.  During that proceeding, the defendant also appealed Judge Lehrburger's decision denying him bail.  As part of the bail appeal, defense counsel had the following colloquy with the Court:

> **Mr. Williams**: . . . since the last bail hearing, the prosecutor has done more discovery review and can confirm that there was at least one other person seen on surveillance footage entering and exiting that apartment at issue. So I think that further undercuts the strength

of the Government's case at this stage. Moreover, I believe that upon further review of the discovery, there may be others that also enter and exit the apartment.

**The Court:** Sounds pretty speculative to me, counsel.  That sounds rather speculative to me.

**Mr. Williams:** In terms of the Government's evidence, your Honor?

**The Court:** No. In that you're speculating that the evidence might show other people entering and exiting the apartment.

*See* Exhibit B (December 18, 2025 Hearing Tr.) at 6:12-25.

The Court denied the request for bail, explaining, among other things, that "stockpiling" firearms and ammunition was "greatly concerning," "particularly in a person who has a prior conviction"; the "weight of the evidence," was "strong" including the "video evidence" and the "fact that the Superintendent of the building is familiar with the defendant and states that the defendant broke into the apartment and changed the locks"; and the "defendant's prior convictions" included multiple violent offenses, as well as history of flight, weighed in favor of detention.  *Id*. at 13:15-14:20.

## ARGUMENT

### I.    The Defendant's Spoliation Claim Is Meritless

The defendant accuses the Government of spoliation and argues that dismissal of the indictment or an adverse jury instruction would be an appropriate sanction.  The Second Circuit has defined spoliation to be "the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d at 148. To prevail on a spoliation claim, a criminal defendant must show: (1) "that the evidence possessed exculpatory value that was apparent before it was destroyed"; (2) that the evidence "was of such a nature that the

defendant would be unable to obtain comparable evidence by other reasonably available means"; and (3) "bad faith on the part of the [g]overnment." *United States v. Greenberg.* 835 F.3d 295, 305 (2d Cir. 2016). Thus, in a criminal case, a defendant must show that the destruction of evidentiary material in question "violate[s] due process." *Id.* at 303. "Before these factors become relevant, however, the record must first show that evidence has been lost and that this loss is 'chargeable to the State.'" *United States v. Rahman*, 189 F.3d 88, 139 (2d Cir. 1999).

The "[f]ailure to satisfy any of these requirements, including a failure to show the Government's bad faith, is fatal to a defendant's spoliation motion." *United States v. Walker*, 974 F.3d 193, 208-09 (2d Cir. 2020). And the burden is on the defendant "to prove the elements of a spoliation claim by a preponderance of the evidence." *Tchatat v. O'Hara*, 249 F. Supp. 3d 701, 711 (S.D.N.Y. 2017), *aff'd sub nom. Tchatat v. City of New York*, 795 F. App'x 34 (2d Cir. 2019). Even where a defendant prevails on a spoliation claim, dismissal in particular is considered a "drastic remedy" that "should be imposed only in extreme circumstances." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).

As explained below, the defendant has not proved any of the elements of a spoliation claim, and his claim fails for, at minimum, four independent reasons. Ultimately, purported infirmities in the video surveillance evidence go to the weight of that evidence, which is an argument properly made to the jury at trial and not on a motion to dismiss.

### A. The Defendant Has Failed to Establish Any Loss of Evidence That Is Chargeable to the Government

As a threshold matter, to prevail on a spoliation claim, the "record must first show that evidence has been lost and that this loss is chargeable to the State." *Greenberg*, 835 F.3d at 303. While the

Government does not concede that any evidence has been lost,[1] the Court need not wade into that factual dispute here.  That is because the parties agree that the video surveillance in question was maintained by a third-party private security company, then requested by the Building Superintendent, and finally conveyed to the Government by the Superintendent.  *See* Motion, Barkhordar Affidavit at ¶ 3.  The defendant's spoliation claim thus fails as a matter of law because any evidence supposedly lost by a private, third-party—in this case a third-party two layers removed from the Government—is not chargeable to the Government in a criminal prosecution.

The Second Circuit and courts in this Circuit have made clear time and again that the Government's failure to collect evidence—including video evidence—does not qualify as the destruction of evidence "chargeable" to the Government.  In *Greenberg*, the Second Circuit affirmed the denial of a request for spoliation sanctions based on the Government's "deficient and incomplete" copying of computer hard drives because, among other reasons, the defendant had "not provide[d] substantive support for his argument that the failure to *collect* evidence could

---

[1] The defendant claims that the Government's "production of video surveillance footage is largely incomplete." Mot. at 6.  In support of this theory, the defendant provides an affidavit from the Chief Operations Officer of the Building's Management Company who claims that the Building's video surveillance system "saves continuous footage," which is stored for 30 days. Mot. at 7, Ex. 1.  The defendant thus argues that there must have been more recorded footage than the 24 clips provided by the Government.  It is telling that the defendant did not speak with the individual actually responsible for collecting the surveillance footage and providing it to the Government in this case—the Superintendent.  As explained above, the Superintendent stated that the video surveillance system is "motion activated," and thus does not save continuous footage. *See* Ex. A.  The defendant merely speculates as to moments that he believes must have been captured, while providing no basis to believe they in fact were.  *See Sachs*, 2012 WL 3822220, at *7 ("[C]ourts routinely have declined to infer that evidence existed when presented with only circumstantial supporting evidence. Specifically with regard to video recordings, courts have found that the mere presence of a video camera does not establish that the camera was in place to record at the time, nor does its presence establish that any recording was made at the time of the incident.").  To the extent the Court wishes to resolve this factual dispute, the Government requests the opportunity to provide additional evidence on this subject.

ground a due process claim." *Greenberg*, 835 F.3d at 305; *see also United States v. Cesiro*, 2024 WL 4647667, at \*2 (2d Cir. Nov. 1, 2024) ("While Cesiro argues that the Government should have taken affirmative steps to preserve the data … he provides no substantive support for [the] argument that the failure to *collect* evidence could ground a due process claim in circumstances analogous to those here."). Accordingly, courts in this Circuit have made clear that "spoliation sanctions are applicable only when a party loses or destroys evidence . . . not when he or she fails to collect it." *Sachs*, 2012 WL 3822220, at \*9.

Indeed, courts have denied the request for spoliation sanctions in the face of remarkably similar allegations made against the Government. For example, in *Robinson*, the defendant raised a spoliation claim in a criminal case where the Government produced "a portion of video" of a crime committed in a fast food chain parking lot, but conceded that "the balance of the video . . . had been lost or destroyed" by the restaurant. *United States v. Robinson*, 16 Cr. 545, (ADS) 2019 WL 5864135, at \*9 (E.D.N.Y. Nov. 8, 2019). The district court explained that "while a case can be made that [law enforcement] erred significantly by failing to recover the entire [video] recording from the restaurant, that does not make the restaurant's failure to preserve the evidence chargeable to the Government." *Id.* at \*9. In other words, "[t]he Government bears no constitutional duty to seize potentially relevant documents from a third party simply because they might be exculpatory." *Id.* at \*9. Similarly, in *Sachs*, Judge Oetken denied spoliation sanctions, including an adverse inference instruction, in a Section 1983 action where NYPD officers were allegedly negligent in failing to secure surveillance video from a restaurant because the "failure to collect evidence," cannot form the basis of a spoliation claim. *Sachs*, 2012 WL 3822220, at \*9. Other examples abound. *See, e.g., Creighton v. City of New York*, No. 12 CV 7454, (PGG) 2017 WL 636415, at

8

*18 (S.D.N.Y. Feb. 14, 2017) ("Plaintiff's spoliation claim is—as to the surveillance footage—premised on the notion that the NYPD was legally obligated to seize the Mini Mart DVR. Spoliation sanctions address the destruction, alteration, or loss of evidence in a party's control, however, and the Mini Mart DVR was owned and maintained by Terab, a private third-party.").

Without citing authority to the contrary, the defendant entirely ignores this large body of precedent.   Instead, he offers an argument no court has ever embraced, that the Government exercised "constructive possession" over the video footage captured by the private company here because the Superintendent operated as the Government's "representative" when producing evidence. Mot. at 10.  That is wrong.  As a matter of basic agency law, third parties who voluntarily provide evidence to the Government do not qualify as the Government's agents or "representatives."  *Cf. Johnson v. Clearview AI, Inc.*, No. 23 Civ 2441 (KPF), 2024 WL 2274267, at *6 (S.D.N.Y. May 20, 2024) (explaining that the terms "representative" and "agent" are often used synonymously, and that, among other things, parties "consent" to an agency relationship, and a principal, "direct[ly] control[s]" an agent and "maintain[s] control over the methods and details" of production process operated by an agent).

Thus, courts have made clear time and again that a private party's treatment of evidence—including the intentional *destruction* of evidence—is not "chargeable" to the Government for the purposes of a spoliation motion, notwithstanding the Government's potential ability to request, or even demand, evidence from that party.  *Rahman*, 189 F.3d at 140 (informant's alleged intentional destruction of tapes was not chargeable to the Government); *United States v. Kloszewski*, 760 F. App'x 12, 14 (2d Cir. 2019) (upholding denial of motion to dismiss based on supposed spoliation because there was no evidence "that the Government played any role in the loss" of evidence from

9

a cooperator's cellphone); *see also Cesiro*, 2024 WL 4647667, at *2 (affirming denial of spoliation claim based on termination of an online account by third party that had acted "on its own initiative").  The defendant does not offer a single example of a case in which a spoliation claim has succeeded under remotely similar circumstances.

### B. The Defendant Has Failed to Establish That Any Missing Evidence Would Be Exculpatory.

Even if the defendant could establish the destruction of evidence and that such a loss was "chargeable" to the Government (and he cannot), his spoliation claim would still fail.  To succeed on a spoliation claim, the defendant must also prove that the evidence "possess[ed] an exculpatory value that was apparent before the evidence was destroyed."  *Greenberg*, 835 F.3d at 302; *see also Rastelli*, 870 F.2d at 833.  Thus, a party seeking sanctions for spoliation "must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 109 (2d Cir. 2002).  Where a defendant can only "speculate as to the potential exculpatory value" of lost evidence, that is "insufficient" to support a spoliation motion.  *Cesiro*, 2024 WL 4647667, at *2.

The defendant's rampant speculation here does not establish the existence of exculpatory evidence.  The defendant first conjectures that there should be footage of the "building superintendent and a locksmith" accessing the Apartment before law enforcement gained entry, as well as footage of the defendant "fleeing" the Apartment during the law enforcement search.  *See* Motion at 10-11.[2]  To the extent such footage was captured, it would be *inculpatory*, as it would

---

[2] Given that the Superintendent understandably provided video footage only prior to law enforcement's entry, such footage was never "lost" in the first place.

simply confirm events implicating the defendant that were described by law enforcement and/or captured on body camera footage. *See Greenberg*, 835 F.3d at 305 (affirming denial of adverse inference instruction regarding missing evidence where evidence would have been "*against* the interests of the defendant"). Next, the defendant goes even further afield, speculating that because there is footage of an unknown individual exiting the Apartment a week prior to law enforcement entry, there "may" have been footage showing "others entering and exiting the apartment during the relevant time period." Mot. at 11. "Or *even better*," the defendant posits, "the footage may show" other individuals "carrying items that resemble firearms or a bag similar to the one where several firearms were later found." *Id.* at 11-12 (emphasis added). That is precisely the same unsupported "speculation," regarding hypothetical video surveillance that the Court rejected during the defendant's bail appeal, *see* pp. 4-5, *supra*, and it is patently insufficient to support a spoliation claim. *See Walker*, 974 F.3d at 208 (affirming denial of motion for new trial based on supposed spoliation of video evidence because the defendant "did not assert that he knows what the missing video footage contained, let alone that the missing footage was exculpatory"). As such, the Court can also reject the defendant's spoliation claim on this basis alone.

## C. The Defendant Has Failed to Show That Any Lost Evidence Is Otherwise Unavailable

The defendant's spoliation claim also fails because he does not prove that the supposedly exculpatory evidence is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Greenberg*, 835 F.3d at 302.

The defendant claims that "without the full video surveillance, the defense is prevented from establishing whether other people entered the apartment during th[e] relevant time period." Mot. at 16. That is not so. Although the defendant asserts that hypothetical footage of others

11

entering the Apartment may be helpful to his case, there are many alternative means of establishing that other individuals entered the Apartment and creating doubt as to the probative value of the video evidence the Government collected. For example, the defendant concedes that he can examine witnesses, such as the Superintendent, and question them as to who they saw entering and exiting the Apartment as well as their knowledge of the functioning of the surveillance system. Mot. at 13. The defendant objects that such testimony "would not carry the same weight as video evidence," *id.*, but the available evidence need only be "comparable"—not identical—to defeat a spoliation claim. *See United States v. Barnes*, 411 F. App'x 365, 369 (2d Cir. 2011) (finding requirement that defendant be unable to obtain comparable evidence unsatisfied where Government lost DNA evidence but the defendant "could have challenged the DNA expert's results by way of cross-examination"); *California v. Trombetta*, 467 U.S. 479, 490 (1984) (failure to preserve breath samples did not qualify as a due process violation where "[r]espondents were perfectly capable of raising these issues [regarding the functioning of breathalyzers] without resort to preserved breath samples").

Having thus far failed to use "reasonably available means of obtaining comparable evidence," the defendant "may not now complain that the failure of the Government to preserve the [surveillance footage] . . . violated his due process right to a fair trial." *Rastelli*, 870 F.2d at 833 (finding no due process violation from lost recordings where defendant could obtain comparable evidence through FBI summaries and testimony).

## D.     The Defendant Has Failed to Establish Bad Faith

The defendant's due process claim fails for yet another independent reason, the inability to prove bad faith. "[U]nless a defendant can show bad faith on the part of the police, the destruction of potentially useful evidence is not a denial of due process." *United States v. U.S. Currency in*

*the Amount of $228,536.00*, 895 F.2d 908, 917 (2d Cir. 1990); *Rastelli*, 870 F.2d at 833 (where "record is barren of proof that the Government lost the evidence in bad faith," "[o]n this ground alone, the missing-evidence claim must fail"); *United States v. Pirre*, 927 F.2d 694, 697 (2d Cir. 1991) (even assuming unpreserved evidence "might have been potentially useful" to the defense, "absent bad faith there is no violation"). The defendant does not come close to establishing bad faith on the part of the Government, and on that basis alone, the Motion can be denied.

In support of his claim of bad faith, the defendant argues that the "selective preservation" of video surveillance is a "dereliction of duty" that qualifies as bad faith. Mot. at 15. While wrong as a matter of fact, this accusation does not in any event satisfy the standard for establishing bad faith. As the Second Circuit has explained, "carelessness in preserving" evidence, even evidence "of obvious relevance and importance," does not demonstrate bad faith on the part of the Government, "short of the intentional destruction of documents." *Greenberg*, 835 F.3d at 304; *see also Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) (destruction of semen samples that were of potential use to the defense did not deprive the defendant of due process where loss could "at worst be described as negligent"). Indeed, even where "the Government is under an obligation to preserve relevant recordings" that it *actually possesses* "where a defendant has pointed to no evidence that the [evidence was] intentionally destroyed, their destruction could not have amounted to spoliation." *In re Terrorist Bombing of the U.S. Embassies in East Africa*, 552 F.3d at 148. That is because, there is "no need to punish [the Government] for having failed to preserve [evidence], or to otherwise deter it from undertaking any similar action in the future," if the Government did not "intentionally destroy" evidence. *Id.* at 148; *see also Hernandez v. Burge*, 137 F. App'x 411, 414 (2d Cir. 2005) (no finding of bad faith where defendant failed to produce

13

evidence showing destruction of evidence was "purposeful"); *United States v. Codrington*, No. 08 MC 0291 (NGG), 2009 WL 1766001, at *2 (E.D.N.Y. June 22, 2009) (no finding of bad faith where law enforcement admitted they "lost" portion of video evidence given no finding that destruction was "deliberate").  Thus, even assuming a host of facts, such as that relevant and exculpatory video surveillance was lost and that such evidence is not otherwise available, the defendant's spoliation claim still fails.  Indeed, the defendant's bad faith argument is particularly misplaced because, as noted above, law enforcement reasonably relied on the Superintendent's representations in this case.

*       *       *

To the extent the defendant wishes to challenge supposed gaps in the video evidence he is entitled to explore such issues while examining witnesses at trial, and he is free to argue to the jury that the video evidence is accordingly entitled to less weight.  *Walker*, 974 F.3d at 193 (defendant "relied heavily" on missing surveillance footage during cross-examination and argument, but speculation about the footage's contents did not justify post-trial relief); *Codrington*, 2009 WL 1766001, at *3 (admission of incomplete video evidence, even if "possibly exculpatory portions were negligently destroyed" was not an abuse of discretion given the defense had the opportunity to cross-examine relevant witnesses).  He is not entitled to any sanction for claimed spoliation, including the drastic remedies of dismissal or an adverse jury instruction.

## II.    The Defendant's Second Amendment Challenge Is Meritless

The defendant also argues that Section 922(g)(1) is unconstitutional on its face and as applied to him after *Bruen*.  *See* Mot. at 16-17.  That is incorrect, and those arguments are squarely foreclosed by the Second Circuit's recent decision in *Zherka,* in which the Second Circuit held that

14

Section 922(g)(1) does not violate the Second Amendment and is not subject to as-applied challenges.  140 F.4th at 96.

### A. The Federal Government's Longstanding Prohibition on the Possession of Firearms by Felons is Constitutional

The federal prohibition on possession of firearms by convicted felons does not violate the Second Amendment.  The Second Amendment protects the right to possess arms for "traditionally lawful purposes, such as self-defense within the home," *Heller*, 554 U.S. at 577, and "self-defense outside the home."  *Bruen*, 597 U.S. at 8.  But as the Supreme Court has repeatedly clarified, its decisions interpreting the Second Amendment "d[o] not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.'" *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality) (quoting *Heller*, 554 U.S. at 626); *see also Bruen*, 597 U.S. at 80-81 (Kavanaugh, J., concurring).  Indeed, such prohibitions are "presumptively lawful." *United States v. Rahimi*, 602 U.S. 680, 698 (2024) (holding that, under Section 922(g)(8), an "individual [with a domestic violence restraining order] found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment").  After all, they are consistent with "constitutional text and history," as well as the "principles that underpin our regulatory tradition." *Id.* at 692.

### B. Second Circuit Precedent Forecloses the Defendant's Second Amendment Challenge

Moreover, as the defendant himself is "aware," his claim is currently foreclosed by Second Circuit precedent.  Dkt. 13 at 16.  Specifically, in *Zherka*, the Second Circuit applied *Bruen*'s framework and concluded that Section 922(g)(1) is facially constitutional. *Zherka*, 140 F.4th at 74-91. *Zherka* had previously been convicted of a non-violent conspiracy involving false statements to a bank and the Internal Revenue Service. *Id.* at 70-71.  He sought relief from Section

922(g)(1)'s bar on his possession of firearms, arguing that the statute was unconstitutional as applied to him and that he must be afforded an opportunity to restore his firearm possession rights. *Id.* at 71. The district court rejected his challenge. *Id.* at 71.  On de novo review, the Second Circuit held that:

- The Second Circuit's rejection of a facial challenge to Section 922(g)(1) in *United States v. Bogle*, 717 F.3d 281 (2d Cir. 2013), remains good law after *Bruen*.  *Id.* at 74-75.

- Convicted felons are among "the people" to whom the Second Amendment applies.  *Id.* at 75- 77.

- The historical tradition of firearm regulation included a "longstanding power to disarm dangerous categories of persons," and Section 922(g)(1) comports with that tradition.  *Id.* at 77-91.

- Because Congress has the authority to "disarm[] large classes of people based on" a categorical finding of dangerousness, Section 922(g)(1) is not susceptible to as-applied challenges, regardless of whether the defendant's prior felony was violent or non-violent. *Id.* at 91-96.

- Because Section 922(g)(1) "constitutionally disarms felons as a class," felons do not have a due process right to a mechanism for individualized relief from Section 922(g)(1).  *Id.* at 96.

*Zherka* therefore disposes of the defendant's facial and as-applied challenges to Section 922(g)(1).  The Second Circuit has confirmed as much on numerous recent occassions.  *See, e.g.*, *United States v. Fable*, No. 24-614, 2025 WL 2803413, at *2 (2d Cir. Oct. 2, 2025); *United States v. Reyes*, No. 24-2723, 2025 WL 2741743, at *1 (2d Cir. Sept. 26, 2025); *United States v. Abreu*, No. 24-1844, 2025 WL 2674103, at *1 (2d Cir. Sept. 18, 2025); *United States v. Delgado*, 149 F.4th 244, 247 (2d Cir. 2025); *United States v. Rodriguez*, No. 23-6640, 2025 WL 2383829, at *1 (2d Cir. Aug. 18, 2025); *United States v. Sabree*, No. 23-7218, 2025 WL 2202955, at *1 (2d Cir. Aug. 4, 2025); *United States v. Martin*, No. 23-7507, 2025 WL 2180611, at *2 (2d Cir. Aug. 1, 2025); *United States v. Acevedo*, No. 24-67, 2025 WL 2166773, at *1 (2d Cir. July 31, 2025);

*United States v. Washington*, No. 23-6664, 2025 WL 1936934, at *1 (2d Cir. July 15, 2025); *United States v. Johnson*, No. 24-1629, 2025 WL 1872847, at *1 (2d Cir. July 8, 2025); *United States v. Acosta*, No. 24-965, 2025 WL 1872833, at *1-2 (2d Cir. July 8, 2025); *United States v. Williams*, No. 23-3840, 2025 WL 1822301, at *1 (2d Cir. July 2, 2025); *United States v. Sternquist*, No. 24-2135, 2025 WL 1822512, at *1 (2d Cir. July 2, 2025); *United States v. Centeno*, No. 23-6650, 2025 WL 1806227, at *1 (2d Cir. July 1, 2025); *United States v. Thawney*, No. 22-1399, 2025 WL 1793746, at *2 (2d Cir. June 30, 2025); *United States v. Smith*, No. 24-1384, 2025 WL 1778943, at *1 (2d Cir. June 27, 2025); *United States v. Dennis*, No. 21-2952, 2025 WL 1751946, at *4 (2d Cir. June 25, 2025); *United States v. Nelson*, No. 23-7893, 2025 WL 1681901, at *1 (2d Cir. June 16, 2025).

Accordingly, because the Second Circuit's holdings in *Zherka* plainly apply here, the defendant's Second Amendment claim is meritless.

## CONCLUSION

For the foregoing reasons, the Court should deny the defendant's Motion in its entirety.

Dated: New York, New York
April 29, 2026

Respectfully submitted,

JAY CLAYTON
United States Attorney
Southern District of New York

By: */s/ Leslie B. Arffa*
Leslie B. Arffa
Assistant United States Attorney
(212) 637-6522
Leslie.arffa@usdoj.gov

17