**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

September 2, 2026

**BY ECF**
The Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: *United States v. Luis Louis*, 25 CR. 563 (LAP)**

Dear Judge Preska:

The Government respectfully submits this letter in advance of the sentencing of defendant Luis Louis, scheduled for September 9, 2026. The defendant unlawfully commandeered an apartment in the Bronx and used it to stockpile 10 firearms, including three assault rifles, along with hundreds of rounds of ammunition. The defendant's conduct presented a severe danger to the community, and his violent criminal history demonstrates a pattern of reckless disregard for the law. The Court should impose a sentence within the United States Sentencing Guidelines ("U.S.S.G.") range of 70 to 87 months.

## I. Background and Offense Conduct

On October 10, 2025, New York City Police Department ("NYPD") Officers responded to a reported burglary at an apartment building located on Townsend Avenue in the Bronx (the "Building"). Final Presentence Investigation Report, dated August 31, 2026 ("PSR") ¶ 6. The Building Superintendent informed the Officers that the defendant had broken into an unoccupied apartment in the Building (the "Apartment"), changed its locks, and appeared to be using the Apartment to store his personal belongings. PSR ¶ 6. The Superintendent was familiar with the defendant because the defendant had previously stayed at a different apartment in the Building. PSR ¶ 6. The Superintendent also provided video surveillance footage taken from the hallway outside of the Apartment, which revealed the defendant entering and exiting the Apartment over the course of over a week prior to and on the morning of October 10, 2025. PSR ¶ 9.

After the Officers gained entry to the Apartment, they recovered, among other things, approximately 10 firearms as well as approximately 204 rounds of ammunition for various firearms. PSR ¶ 7. While the Officers were recovering the firearms and ammunition in the Apartment, the defendant attempted to approach the Apartment, and, upon seeing that it was occupied by the NYPD Officers, fled. PSR ¶ 8.

The defendant has an extensive criminal history. He has at least four prior felony convictions, including a 2015 conviction for robbery in the first degree for robbing a livery cab driver at gunpoint, for which he was sentenced to nine years' imprisonment. PSR ¶ 34. His most recent conviction—for assault in the third degree—occurred after he attacked a store owner with a stool, causing the victim to bleed from his head and arms. PSR ¶ 36. And the defendant had just finished completing a term of supervised release for the robbery conviction when he engaged in the instant offense.

## II. Procedural History

On October 24, 2025, the defendant was charged by Complaint with violating 18 U.S.C. § 922(g)(1). *See* Dkt. 1. Members of law enforcement were unable to locate the defendant until he was arrested by the NYPD for breaking into yet another apartment in early December. On December 3, 2025, the defendant was presented before the Honorable Robert W. Lehrburger, Magistrate Judge for the Southern District of New York and detained. On December 10, 2025, a grand jury sitting in this District returned an Indictment charging the defendant with one count of violating 18 U.S.C. § 922(g)(1). Dkt. 5. On April 8, 2026, the defendant moved to dismiss the Indictment on the ground that the government had allegedly failed to collect relevant surveillance footage. *See* Dkt. 12-14. On May 13, 2026, the Court denied the defendant's motion to dismiss for four independent reasons, including because the defendant had failed to establish the loss of any evidence chargeable to the Government and had failed to establish that any lost evidence would be exculpatory. On June 9, 2026, the defendant pled guilty to Count One of the one count Indictment.

## III. The Applicable Guidelines Range

### A. The Defendant's Offense Level is 25

The Government agrees with the Probation Office's calculation of the defendant's offense level under the Guidelines, which the defendant does not dispute. The defendant's base offense level is 22 because the offense involved a semiautomatic firearm and the defendant committed the instant offense after sustaining a felony conviction for a crime of violence. PSR ¶ 19; U.S.S.G. § 2K2.1(a)(3). A four-point enhancement applies because the offense involved three or more firearms—in this case 10. PSR ¶ 20; U.S.S.G. §2K2.1(b)(1)(B). A two-point enhancement applies because at least one of the 10 firearms was stolen. PSR ¶ 21; U.S.S.G. §2K2.1(b)(4)(A). The defendant receives a three-level decrease for acceptance of responsibility. PSR ¶¶ 26-27; U.S.S.G. §§ 3E1.1(a),(b)

### B. The Defendant Is in Criminal History Category III

The Government also agrees with Probation that the defendant has six criminal history points, which place him in Criminal History Category III. Notably, the defendant still has three prior criminal convictions for which he receives no criminal history points because they fall outside the Guidelines' criminal history window.

The defendant disagrees with Probation's calculation of his criminal history score. The defendant argues that he should not receive criminal history points for his two September 29, 2015 convictions, for Criminal Possession of a Controlled Substance in the Third Degree and Assault in the Third Degree, and thus that he should be in Criminal History Category II. Under Guidelines Section 4A1.2(e), any "prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted," as part of his criminal history score. The defendant was sentenced for his 2015 convictions on October 8, 2015. Accordingly, the defendant argues that because the firearms were recovered from the Apartment and he was arrested for the instant offense on October 10, 2025—10 years and two days after the 2015 sentencings—the 2015 convictions fall outside the Guidelines' 10-year window set by U.S.S.G § 4A1.2(e), and thus should not be counted in his criminal history score. That is wrong for two reasons.

*First*, the evidence supports the conclusion that the defendant began stockpiling weapons at least by October 8, 2025. While the firearms were recovered in the Apartment the defendant had commandeered on October 10, 2025, building surveillance video footage confirms that the defendant was occupying the Apartment for over a week prior. Indeed, he is the only person seen entering or exiting the Apartment for nearly the week prior to his arrest. It is highly unlikely that the defendant brought all 10 firearms, including three assault rifles, into the Apartment moments before the police arrived on October 10, 2025. Instead, the reasonable inference is that the defendant had begun stockpiling the unlawful firearms at minimum two days prior to October 10, 2025, putting his 2015 convictions within the Guidelines 10-year window. *See United States* v. *Harris*, 534 F. App'x 906, 908 (11th Cir. 2013) (affirming counting of prior conviction as being within Guidelines 10-year window because "[c]ontrary to Harris's contention, his relevant conduct began when he became criminally involved in the conspiracy, not when he was first identified by law enforcement.").

*Second*, even if the defendant had not started stockpiling weapons by October 8, 2025—and it is reasonable to infer that he had—the defendant had least commenced other conduct relevant to the instant offense by that date. The Guidelines commentary provides that, in determining the applicable time period for the 10-year criminal history window, "the term 'commencement of the instant offense' includes *any relevant conduct*." 4A1.2(a) cmt. n. 8 (citing U.S.S.G. § 1B1.3 (Relevant Conduct) (emphasis added)). Section 1B1.3, in turn, defines as relevant conduct all acts "that occurred during the commission of the offense of conviction, *in preparation for that offense*, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1) (emphasis added). Adopting the defendant's argument would therefore require explicitly rejecting the Guidelines commentary, as there is no question the relevant conduct here began at least when the defendant commandeered the Apartment over a week prior to his arrest. *But see United States v. Rainford*, 110 F.4th 455, 475 & n.5 (2d Cir. 2024) (Guidelines provisions and commentary are to be "read together," and commentary controls unless "plainly erroneous"). In any event, the Guidelines commentary provides the best reading of 4A1.2(e). To "commence" means "to enter upon," "to start." *Black's Law Dictionary* 183 (6th ed.1991) (defining "commence" as "[t]o initiate by performing the first act or step; [t]o begin, institute or start"). The defendant entered upon this criminal offense when he commandeered the Apartment in order to stockpile weapons, and thus he had at minimum "commenced" the offense prior to October 8, 2025.

## IV. Applicable Law

The United States Sentencing Guidelines still provide strong guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), *abrogated on other grounds by United States v. Fagans*, 406 F.3d 138, 142 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"—that "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). If the Court imposes a sentence outside the Guidelines range, it must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*).

After the Guidelines calculation, a sentencing judge must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; the defendant's need for rehabilitation; the kinds of sentences available; the need to avoid unwarranted disparities in the sentences imposed on similarly situated defendants, and the sentencing range under the Guidelines.

## V. A Sentence Within the Guidelines Range Is Appropriate.

A sentence within the applicable Guidelines range of 70 to 87 months' imprisonment is sufficient, but not greater than necessary, to achieve the purposes of sentencing in this case.

A substantial sentence is necessary to reflect the seriousness of the defendant's conduct and to provide just punishment. As Congress and courts have recognized, one firearm in the hands of a violent felon represents a danger to a community. *See United States v. Sapp*, No. 2 Cr. 1065 (NGG), 2007 WL 1232073, at *3 (E.D.N.Y. Apr. 26, 2007) ("Defendant's conduct was extremely serious. When a felon possesses a gun, the public is put at significant risk. The fact that Congress has enacted a specific criminal statute that provides serious penalties for such conduct reflects this significant risk."); *see also United States v. Brown*, 690 F. App'x 774, 775 (2d Cir. 2017) (explaining that "the crime of conviction, possession of a loaded firearm by a defendant convicted of numerous violent felonies, was particularly serious"). It is self-evident that 10 semiautomatic firearms, including three assault rifles, along with 204 rounds of ammunition, in the hands of a felon could cause incalculable damage, especially in view of the defendant's violent criminal history. The defendant's decision to burgle an Apartment and turn a residential building in the Bronx into his personal weapons warehouse deserves a serious response. Certainly, there is no "compelling" justification to deviate from the Guidelines under these circumstances. *Cavera*, 550 F.3d at 189

Specific deterrence considerations also weigh heavily in favor of a Guidelines sentence. The defendant has a significant criminal history, including multiple convictions for violent behavior and drug dealing. Those sentences have not deterred subsequent criminal behavior.

Indeed, the defendant had just finished a term of supervised release when he committed the instant offense and, as mentioned above, he was arrested for breaking into an apartment just a few months later. Having robbed a cab driver at gunpoint and smashed a storeowner's window and head in with a chair, among other offenses, the defendant's additional transgressions should not be met with leniency.

The defendant suggests that other defendants have been issued relatively lenient sentences for violating § 922(g) where the conviction was for "straightforward possession" of a firearm. Def. Mem. at 5. As a threshold matter, this is not a "straightforward possession" of a firearm case: the defendant stockpiled almost a dozen semiautomatic firearms and 204 rounds of ammunition in a residential apartment. In any event, the defendant's self-serving selection of just four distinguishable sentences out of the many imposed in this District for violations of § 922(g) says very little. There are many cases in this District in which judges have imposed significant sentences on defendants for merely possessing a firearm after a felony conviction—even where those defendants never brandished or fired the gun and did not possess narcotics. *See, e.g.*, *United States v. Estevez*, 24 Cr. 575 (JHR) (imposing sentence of 55 months' imprisonment where defendant faced Guidelines range of 46 to 57 months' imprisonment in case where Probation found a loaded firearm under defendant's mattress in a safety sweep of his residence); [1] And while the defendant relies on statistics showing that over half of defendants in this District do not receive a Guidelines sentence in a firearm possession case, Def. Mem. at 5, that comparison is irrelevant and wrong. Under the Guidelines, a court attempting to avoid unwarranted "disparities" among similarly situated defendants must undertake that consideration using a "*nationwide*" approach. *United States v. Wills,* 476 F.3d 103, 109 (2d Cir. 2007) (emphasis added); 18 U.S.C. § 3553(a)(6). As the defendant's own exhibit makes clear, nearly 60% of federal defendants convicted of firearms offenses received an at- or above-Guidelines sentence in 2025. *See* Def. Exhibit 1 at 5.[2] This is not the minority case that would justify a below-Guidelines sentence.

---

[1] *See also e.g.*, *United States v. Faisal*, 24 Cr. 304 (AS) (imposing sentence of 70 months' imprisonment where defendant, who, while fleeing from NYPD officers, tossed away a jacket later found to contain a loaded firearm); *United States v. Tonge*, No. 24 Cr. 189 (JGLC) (imposing sentence of 46 months' imprisonment where defendant, who was arrested during a traffic stop and found to have a gun in his waistband); *United States v. Laguna*, 23 Cr. 436 (JHR) (imposing sentence of 46 months' imprisonment where defendant, who was found to have a loaded firearm in his waistband, faced Guidelines range of 41 to 51 months' imprisonment); *United States v. Aryeety*, 23 Cr. 561 (JPC) (imposing sentence of 78 months' imprisonment where defendant was convicted of possessing a firearm that the defendant tossed from his car after leading police on a high-speed chase; *United States v. Lake*, No. 23 Cr. 486 (KPF) (imposing sentence of 46 months' imprisonment, at high end of the parties' stipulated Guidelines range of 37 to 46 months' imprisonment, where defendant possessed and attempted to sell multiple firearms).

[2] Moreover, as explained in the PSR, during "the last five fiscal years (FY 2021-2025), there were 404 defendants whose primary guideline was §2K2.1, with a Final Offense Level of 25 and a Criminal History Category of III, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 399 defendants (99%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 67 month(s) and the median length of imprisonment imposed was 70 month(s)." PSR at 19 (Appendix A).

Finally, general deterrence values support a Guidelines sentence here. Firearms possession by felons remains a significant public safety concern, particularly in residential areas, such as the one the defendant used for his weapons storing purposes. The defendant's requested 30-month sentence would send a hazardous message: that firearms "possession," involving numerous dangerous firearms by a defendant with a significant criminal history, will be met with leniency in the form of a well-below-Guidelines sentence. That message would strike at the heart of general deterrence in this District and nationwide.

## VI. Conclusion

For the foregoing reasons, the Government respectfully submits that a sentence within the applicable Guidelines range of 70 to 87 months' imprisonment, to be followed by three years of supervised release, would appropriately account for the defendant's history and characteristics, reflect the seriousness of the defendant's conduct, provide just punishment, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. Such a sentence would be sufficient but not greater than necessary to serve the goals of sentencing.

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney

By: ______________________
Leslie B. Arffa
Assistant United States Attorney
(212) 637-6522

cc: Kristoff Williams, Esq. (counsel for defendant) by ECF